FILED

SB

UNITED STATES DISTRICT COURT
MIDDLE DISTRCT OF FLORIDA    2018 DEC 14   AM 11: 40

CASE NO.

CLERK,US DISTRICT COURT
H.DDLE DISTRICT OF FLORIDA
FORT MYERS FLORIDA

United States ex rel.
JANET WALTON and
TIM YABLONOWSKI,

        Plaintiff-Relators,

v.

KEVIN PHILIP ROSENBACH, M.D.,
KEVIN P. ROSENBACH, M.D. P.A.
CAREONE HEALTH CARE CENTERS LLC,
BAXTER HEALTHCARE CORPORATION,
WALGREENS BOOTS ALLIANCE, INC.,
CVS CAREMARK CORPORATION,
ANTHONY "TONY" MUNOZ,
MARY C. NICOTRA and BRAD FASSBENDER,

        Defendants.

_____/

**FILED IN CAMERA AND
UNDER SEAL**

2:18-CV-818-FtM-99MRM

## QUI TAM COMPLAINT

1.     This is a *qui tam* complaint filed by Plaintiff-Relators Janet Walton and Tim Yablonowski ("Relators" or "Co-relators," collectively, or "Co-relator," individually), for themselves and on behalf of the United States, to recover damages and civil penalties arising from the actions of CareOne Health Care Centers, LLC, Kevin Philip Rosenbach, M.D., Baxter Healthcare Corporation, Anthony "Tony" Munoz, Walgreens Boots Alliance, Inc, Brad Fassbender, and Marcy C. Nicotra, in violation of the False Claims Act, 31 U.S.C. §§ 3729-3733 *et seq.*, and the common law to recover treble damages sustained by, and civil penalties and restitution owed to, the United States based upon (1) billing and submitting claims to federal healthcare programs for services and procedures that were not medically necessary, not medically

S-2

justified, and/or not actually provided, and (2) violations of the Anti-Kickback Statute (the "AKS"), 42 U.S.C. § 1320a-7b(b), for paying and accepting kickbacks to prescribe certain Baxter pharmaceutical products that were reimbursed by federal health care programs.

## I.      Introduction

2.      In exchange for cash, travel, sex, and status, all supplied by a drug manufacturer and several pharmacies, Dr. Kevin Philip Rosenbach falsely and fraudulently diagnosed Medicare and private insurance patients with Primary Immunodeficiency Syndrome ("PID") – a rare disease in which a person's immune system (or a portion of the immune system) is missing or does not function properly. A 2007 study in the Journal of Clinical Immunology estimated that the population in the United States of patients diagnosed with PID was approximately 1 in 1,200 persons. Despite its lack of prevalence in the general public, at one-point, in approximately 2015, Dr. Rosenbach had diagnosed and was prescribing medication for over 300 PID patients out of his medical office in Collier County, Florida – a higher number of PID patients than Shands Hospital at the University of Florida. During this scheme, Baxter advised Dr. Rosenbach that he was the number two prescriber for PID patients in the world – a fact which Dr. Rosenbach routinely bragged about.

3.      The medications used to treat PID patients are expensive. The primary medication prescribed by Dr. Rosenbach, Hyqvia (hyaluronidase/immune globulin), starts at over $500 for 26.25 milliliters and can cost as much as $6,036.66 for 315 milliliters – the range of typical *weekly* or *monthly* doses. A prescription for PID medication was extremely valuable both to the manufacturer of the medication as well as the pharmacy dispensing the medication. As such, the drug manufacturer, Baxter, and the pharmacies, CVS and Walgreens, through their representatives, would go to great lengths to (1) induce Dr. Rosenbach to diagnose patients with PID, regardless

of their actual medical condition, and (2) induce Dr. Rosenbach to send his patients to have their prescriptions filled at those particular pharmacies – including providing sex, cash, paid travel, and status to Dr. Rosenbach in exchange for him falsely diagnosing patients with PID, and directing patients to fill their prescriptions for PID medication to specific pharmacies.

## II.    Jurisdiction and Venue

4.    This action arises under the False Claims Act, 31 U.S.C. §§ 3729-33 ("FCA"), to recover damages and other monetary relief.

5.    Jurisdiction over this action is vested in this Court by 31 U.S.C. § 3732(a) and 28 U.S.C. § 1331, because all counts of this action arise under the laws of the United States.

6.    Venue is proper in this district under 31 U.S.C. § 3732(a). Defendants can be found, reside, or transact business within the district, and many of the acts forming the basis of this action occurred within the district.

## III.    The Parties

7.    Co-Relator Tim Yablonowski was an employee of CareOne Health Care Centers, LLC from 2010 through 2017. Through this employment, he gained first-hand knowledge of the practices discussed herein.

8.    Co-Relator Janet Walton was an employee of CareOne Health Care Centers, LLC from 2012 through 2018.  Through this employment, she gained first-hand knowledge of the practices discussed herein, including specific first-hand knowledge of Dr. Rosenbach's and CareOne's treatment and billing practices.

9.    Defendant CareOne Health Care Centers, LLC, ("CareOne") was a Florida limited liability company located in Collier County, Florida.  At all times material, Dr. Rosenbach was the medical director of CareOne.

3

10.    Defendant Kevin Philip Rosenbach, M.D., was at all times material a physician licensed to practice medicine in the State of Florida and was the Medical Director of CareOne.

11.    Defendant, Kevin Philip Rosenbach, M.D., P.A., was at all times material, a Florida corporation located in Collier County, Florida.

12.    Defendant Baxter Healthcare Corp. is a corporation organized under the laws of Delaware with its principal offices in Deerfield, Illinois. It is a private, wholly owned subsidiary of Baxter International. Baxter Healthcare Corp. and Baxter International are collectively referred to as "Baxter."

13.    Defendant CVS Caremark Corporation (hereafter "CVS Caremark"), the largest provider of prescriptions and related healthcare services in the United States, is incorporated under the laws of the state of Delaware, and headquartered in Rhode Island.

14.    Defendant Walgreens Boots Alliance, Inc., is incorporated in Delaware and has its principal place of business in Deerfield, Illinois. Walgreens Boots Alliance, Inc., operates the Walgreens stores, pharmacies, and home health services providers; both entities will be referred to as "Walgreens."

15.    Defendant Anthony "Tony" Munoz ("Munoz") was a sales representative for Defendant Baxter at all times material to this Complaint.

16.    Defendant Brad Fassbender ("Fassbender") was a prescription drug representative with Defendant, CVS Caremark.

17.    Defendant Mary C. Nicotra ("Nicotra") was a Regional IG/HAE Manager for Defendant, Walgreens.

**IV.    Factual Allegations**

4

18.     In 2010, Co-relator Tim Yablonowski became the practice manager of CareOne. At this time CareOne was treating both allergy patients as well as patients with Primary Immunodeficiency Syndrome ("PID").

19.     PID is a disorder caused by an inherited flaw in the immune system that increases susceptibility to infections.

20.     Soon after taking over the role of practice manager Yablonoswki determined that the PID portion of CareOne's medical practice was not generating enough revenue to justify its continued operation.

21.     During the period from 2015 to 2017, while the PID portion of CareOne's practice did not generate enough revenue to CareOne, it was, in fact, very profitable for Dr. Rosenbach personally.  In exchange for treating PID patients and prescribing expensive medications for PID, Dr. Rosenbach received cash, sex, and luxury travel from Baxter and Walgreens.

22.     Thus, even though CareOne's PID practice did not generate sufficient revenue for CareOne, Dr. Rosenbach refused to discontinue treating PID patients, and, in fact, devoted most of his time and resources to the PID portion of the practice, to the detriment of CareOne.

23.     In an effort to supplement the sparse income (to CareOne) from the PID portion of the practice, Dr. Rosenbach instructed co-relator, Janet Walton, to always use the 99215 billing code when billing PID office visits to Medicare and other third-party payers – even though these office visits were routine and always lasted less than ten minutes, and thus did not meet the criteria to bill for procedure code 99215.

24.     Determination of the proper billing code, among codes 99211–99215, depends on the complexity of the physician's decision-making, the comprehensiveness of both the physical examination and the patient history, the severity of the presenting medical problem, and the

5

amount of face-to-face time that the physician spends with the patient and the patient's family. Code 99215 is the highest code available for office visits and reflects the highest level of comprehensiveness and complexity.

25.    In October of 2014, Baxter received approval from the United States Food and Drug Administration ("FDA") to market the drug HyQvia [Immune Globulin Infusion 10% (Human) with Recombinant Human Hyaluronidase] for the subcutaneous treatment of PID.

26.    As part of the roll out of HyQvia, Baxter assigned sales representative Anthony "Tony" Munoz to CareOne and Dr. Rosenbach.

27.    In early 2015, Dr. Rosenbach provided Baxter representative Munoz access to all CareOne PID patient charts, and without consulting with any of the patients or obtaining their consent, Munoz and Dr. Rosenbach switched all CareOne's PID patients to Baxter's new medication HyQvia, without any consideration for the patient's health or welfare, how the patients' then-existing treatment was working, or the patients' wishes. This was not a medical decision, rather a decision Dr. Rosenbach made for personal financial (and sexual) gain upon inducements from Baxter and Munoz.

28.    During this time period Baxter employee Munoz spent most of his work time in the offices of CareOne providing free services to CareOne and Dr. Rosenbach. After Baxter employee Munoz and Dr. Rosenbach switched CareOne's patients to HyQvia, both Medicare and private insurers frequently issued denials for payment for the HyQvia. When this occurred, Baxter representative Munoz would represent himself as a CareOne employee and handle the telephonic appeals of the third-party payers' (including Medicare) decision not to reimburse for the HyQvia.

29.    Further, during this time Munoz and Baxter were paying Dr. Rosenbach cash kickbacks, providing Dr. Rosenback paid luxury travel, and supplying Dr. Rosenbach with sexual favors.

30.    During this time, and in exchange for Dr. Rosenbach agreeing to switch all CareOne's PID patient's to Baxter's HyQvia drug, Baxter paid to send Dr. Rosenbach on numerous trips for pleasure or for purported "speaking arrangements." Dr. Rosenbach told co-relator Tim Yablonowski on multiple occasions that Baxter provided Dr. Rosenbach with women who engaged in sexual activities with him. Despite the fact that these were purported business trips, Dr. Rosenbach did not provide CareOne with any receipts or travel invoices.

31.    While neither Relator personally witnessed any sales representatives hand Dr. Rosenbach cash, George Olsen, accountant for Dr. Rosenbach and CareOne, has verbally communicated to co-relator Tim Yablonowski that Dr. Rosenbach has a safe in his home containing hundreds of thousands of dollars in cash.

32.    Filling prescriptions for HyQvia and other medications for PID was lucrative business for pharmacies and as such, numerous pharmacies marketed their services to CareOne and Dr. Rosenbach.

33.    In July 2016, Walgreens sales representative Mary C. Nicotra made contact with Dr. Rosenbach to obtain the prescription business for Dr. Rosenbach's PID patients. In an effort to ensure that Dr. Rosenbach would advise his PID patients to use Walgreens as their pharmacy, Nicotra engaged in a sexual/romantic relationship with Dr. Rosenbach. As the result of receiving sex from Nicotra, Rosenbach referred his PID prescriptions to Walgreens for fulfillment.

34.    Later in 2016, Defendant Fassbender, a sales representative with Defendant, CVS Caremark, made contact with CareOne and Dr. Rosenbach seeking to obtain the prescription fulfillment for Dr. Rosenbach's PID patients.

35.    During this time, Defendant Fassbender would routinely spend five (5) hours every weekday at Dr. Rosenbach's office – often sitting in while Dr. Rosenbach conducted patient examinations.

36.    Defendant Fassbender and CVS Caremark purchased a computer for Dr. Rosenbach so that prescriptions could be sent to CVS Caremark easier and more efficiently. Fassbender was charged with dealing with third-party payers in disputes over whether PID medications would be reimbursed. To this end, Fassbender and Dr. Rosenbach falsely identified Fassbender as an employee of CareOne, while Fassbender was actually an employee of CVS Caremark.

37.    Additionally, in an effort to keep the prescription business of Dr. Rosenbach's PID patients who did not feel comfortable administering the medicine themselves – and unlawfully to reward patients for filling their PID prescriptions at CVS Caremark, as directed by Dr. Rosenbach – CVS Caremark offered free home health visits to Dr. Rosenbach's patients to assist them in administering their medication.

## COUNT I
## FEDERAL FALSE CLAIMS ACT
### (31 U.S.C. § 3729(a)(1))

38.    The allegations in paragraphs 1-36 are incorporated by reference.

39.    Defendants violated the False Claims Act in that they knowingly presented or caused to be presented numerous false claims for payment or approval to the United States in violation of 31 U.S.C. § 3729(a)(1); and

40.     As a result of the Defendants violations of 31 U.S.C. § 3729, the United States has suffered damages in an amount to be determined at trial.

## COUNT II
## FEDERAL FALSE CLAIMS ACT
*(Violation of 31 U.S.C. § 3729(a)(2))*

41.     The allegations in paragraphs 1-36 are incorporated by reference.

42.     Defendants violated the False Claims Act in that it knowingly made, used, or caused to be made or used, false records or statements to get false or fraudulent claims paid or approved by the Government in violation of 31 U.S.C. § 3729(a)(2).

43.     As a result of the Defendants violations of 31 U.S.C. § 3729, the United States has suffered damages in an amount to be determined at trial.

## COUNT III
## CONSPIRACY TO VIOLATE FEDERAL FALSE CLAIMS ACT
*(Violation of 31 U.S.C. § 3729(a)(1))*

44.     The allegations in paragraphs 1-36 are incorporated by reference.

45.     Defendants conspired to violate the False Claims Act in that they engaged in a common scheme to:

(1)     knowingly present or cause to be presented numerous false claims for payment or approval to the United States in violation of 31 U.S.C. § 3729(a)(1); and

(2)     knowingly make, use, or cause to be made or used, false records or statements to get false or fraudulent claims paid or approved by the Government in violation of 31 U.S.C. § 3729(a)(2).

46.     By the forgoing acts and omissions, Defendants demonstrated to Co-relators that they had agreed to engage in the fraudulent actions described above, Defendants further took action

in furtherance of this conspiracy and said actions violated 31 U.S.C. § 3729(a)(l) and 31 U.S.C. § 3729(a)(2).

## COUNT IV
## CONSPIRACY TO VIOLATE THE FALSE CLAIMS ACT THROUGH CLAIMS GENERATED BY HEALTH CARE KICKBACKS
### *(Violation of 31 U.S.C. § 3729)*

47.     The allegations in the paragraphs 1-36 are incorporated by reference.

48.     Defendants did willfully violate 42 U.S.C. § 1320a-7b(b)(2)(A), by knowingly and willfully offering to pay any renumeration, including kickbacks and bribes, directly or indirectly, overtly and covertly, in cash and in kind, to a person to induce such person to refer an individual to a person for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole or in part by a Federal health care program.

49.     By explicitly or implicitly certifying that all claims submitted to the federal government were in compliance with governing rules, regulations, and law, when in fact the claims submitted were generated by illegal kickbacks in violation of 42 U.S.C. § 1320a-7b(b)(2)(A), Defendants violated the False Claims Act in that they knowingly presented or caused to be presented numerous false claims for payment or approval to the United States in violation of 31 U.S.C. § 3729(a)(l); and knowingly presented or caused to be presented numerous false claims for payment or approval to the United States in violation of 31 U.S.C. § 3729(a)(l); and/or knowingly made, used, or caused to be made or used, false records or statements to get false or fraudulent claims paid or approved by the Government in violation of 31 U.S.C. § 3729(a)(2).

50.     As a result of the Defendants violations of 42 U.S.C. § 1320a-7b(b)(2)(A) and 31 U.S.C. § 3729, the United States has suffered damages in an amount to be determined at trial.

WHEREFORE, Co-relators, on behalf of themselves and the United States, prays:

10

(a)    That the Court enter judgment against Defendants in an amount equal to three times the amount of damages the United States has sustained because of Defendant's actions, plus a civil penalty of between $5,500 and $11,000 for each violation;

(b)    That Relators be awarded an amount that the Court decides is reasonable for collecting the civil penalty and damages, which shall be at least 15 percent but not more than 25 percent of the proceeds of the action or settlement of the claim if the United States and/or the State of Florida intervenes, and not less than 25 percent nor more than 30 percent of the proceeds of the action or settlement of the claim if the United States does not intervene;

(c)    That Relators be awarded all costs and expenses incurred, including reasonable attorneys' fees; and

(d)    That the Court order such other relief as is appropriate.

**Trial by jury is hereby requested.**

Respectfully submitted,

**ELLSWORTH LAW FIRM, P.A.**
Attorneys for Plaintiff-Relators
1000 5TH Street, Suite 223
Thyssen Building
Miami Beach, FL 33139
(305) 535-2529 Telephone
(305) 535-2881 Facsimile
sean@ellslaw.com

_____/S/_____
Sean M. Ellsworth, Esq.
Florida Bar No. 39845

11

## CERTIFICATE OF SERVICE

Pursuant to Section 31 U.S.C. §3730(b)(2), a true and correct copy of the foregoing has been sent on October 17, 2018, via overnight delivery to:

The Honorable Jefferson Beauregard Sessions III, United States Attorney General
United States Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

The Honorable Maria Chapa Lopez, United States Attorney
Middle District of Florida
400 North Tampa Street
Suite 3200
Tampa, FL 33602

_____/S/_____
Sean M. Ellsworth, Esq.

12